UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DELTA FAUCET COMPANY, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | No. 1:23-cv-00200-JMS-CSW |
| | ) | |
| BEN WATKINS and JOHN DOES 1-10, | ) | |
| | ) | |
| *Defendants*. | ) | |

**ORDER**

Plaintiff Delta Faucet Company ("Delta") filed a Complaint against Defendants asserting claims for trademark infringement and unfair competition under both the Lanham Act and common law and deception under Indiana law. [Filing No. 1.] On June 24, 2023, the Court granted Delta's Motion for Clerk's Entry of Default against Defendant Ben Watkins based on Mr. Watkins' failure to plead or otherwise defend the action. [Filing No. 17.] On September 26, 2023, Delta filed a Motion for Default Judgment against Mr. Watkins, in which it also asks for a permanent injunction. [Filing No. 23.] The Motion is now ripe for the Court's decision.

**I.**
**STANDARD OF REVIEW**

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for a party seeking default judgment. *McCarthy v. Fuller*, 2009 WL 3617740, at *1 (S.D. Ind. Oct. 29, 2009); *see also Lowe v. McGraw–Hill Companies, Inc.*, 361 F.3d 335, 339 (7th Cir. 2004) ("The Federal Rules of Civil Procedure make a clear distinction between the entry of default and the entry of a default judgment."). First, the plaintiff must obtain an entry of default from the Clerk. Fed. R. Civ. P. 55(a). Second, after obtaining an entry of default, the plaintiff may seek an entry of default judgment. Fed. R. Civ. P. 55(b).

1

When entry of default has been obtained, "the well-pleaded allegations of a complaint relating to liability are taken as true," *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quotation and citation omitted), but "those relating to the amount of damages suffered ordinarily are not," *Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012). "The defaulting party cannot contest the fact of his liability unless the entry of default is vacated under Rule 55(c)." *VLM Food Trading Int'l, Inc.*, 811 F.3d at 255 (citation omitted). The entry of default does not determine the rights of the parties, however. *Id.* (citation omitted). "That role is reserved for a default *judgment*." *Id.* "A default judgment establishes, as a matter of law, that a defendant is liable to the plaintiff for each cause of action alleged in the complaint." *Wehrs*, 688 F.3d at 892 (quoting *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007)). A default judgment can only be granted as to what is alleged and demanded in the complaint. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.") Similarly, the Court will only grant relief that is requested in the motion. *GS Holistic, LLC v. MKE Vapor, Inc. d/b/a MKE Vape*, 2023 WL 8238953, at * 5 n.6 (E.D. Wis. Nov. 28, 2023) (the court did not analyze damages that the plaintiff sought in its complaint but did not mention in its motion for default judgment).

To enter default judgment, the Court must have jurisdiction over the defendant. *e360 Insight*, 500 F.3d at 598 ("Default judgments rendered without personal jurisdiction are void."); *see also Swaim v. Moltan Co.*, 73 F.3d 711, 716 (7th Cir. 1996) (instructing that a default judgment will be set aside "as a *per se* abuse of discretion if the district court that entered the judgment lacked jurisdiction."). The failure to answer the complaint does not waive defects in personal jurisdiction. *Swaim*, 73 F.3d at 717.

## II.
### BACKGROUND

Delta has obtained entry of default against Mr. Watkins. [Filing No. 17.] Therefore, in accordance with the standard above, the Court takes the following well-pleaded allegations in Delta's Complaint, [Filing No. 1], as true:

Delta sells faucets and related appliances. [Filing No. 1 at 3.] To promote and protect its brand, Delta has several registered trademarks based on the word "Delta" ("Delta Trademarks")[1] and sells its products exclusively through itself and a network of Authorized Sellers. [Filing No. 1 at 4-5.] Delta contractually requires its Authorized Sellers to abide by numerous quality-control and customer-service requirements, including requirements relating to product inspections, storage, and reporting of complaints. [Filing No. 1 at 4; Filing No. 1 at 16-17.] Delta's quality controls help ensure that consumers receive the quality products and services associated with the Delta name. [Filing No. 1 at 16-17.] Thus, Delta products purchased from Delta or Authorized Sellers come with the Delta Limited Warranty. [Filing No. 1 at 25.] Delta products purchased by unauthorized sellers do not come with the Delta Limited Warranty because Delta cannot ensure the quality of the products or compliance with quality controls. [Filing No. 1 at 25.] As a result of having purchased from unauthorized sellers that are not subject to Delta's quality controls, customers have received poor-quality products and have left negative public reviews of those products, which hurts the value of the Delta Trademarks and the brand's reputation. [Filing No. 1 11-16.]

---

[1] Delta's Trademarks include, but are not limited to, DELTA® (Reg. No. 5,273,845); DELTA® (Reg. No. 2,583,761); DELTA® (Reg. No. 3,062,101); DELTA® (Reg. No. 2,586,604); DELTA® (Reg. No. 4,518,067); DELTA® (Reg. No. 0,668,880); and DELTA® (Reg. No. 4,638,296). [Filing No. 1 at 5.]

Due to the issues caused by unauthorized sellers, Delta regularly monitors the sale of its products online. [Filing No. 1 at 23.] Through this monitoring, Delta discovered that the Ben Watkins Amazon.com storefront, with a Merchant ID number of A2VUGI7D639PP3 (the "Ben Watkins Amazon Storefront"), owned and operated by Mr. Watkins, was advertising and selling unauthorized and non-genuine products bearing Delta Trademarks. [Filing No. 1 at 1-2; Filing No. 1 at 27.] These unauthorized and non-genuine products are different from genuine Delta products sold by Authorized Sellers because they are not subject to Delta's quality controls, are not backed by the Delta Limited Warranty, and are more likely to have quality problems. [Filing No. 1 at 25; Filing No. 1 at 31-35.] The sale of these products is confusing to consumers, as consumers think that the products are sold by an Authorized Seller and are genuine Delta products subject to the Delta Limited Warranty and quality control requirements, when in fact, they are not. [Filing No. 1 at 31-34.]

Delta investigated the Ben Watkins Amazon Storefront and sent Mr. Watkins a cease-and-desist letter to an Ohio address that was listed as the business address of the Ben Watkins Amazon Storefront at the time. [Filing No. 1 at 27.] The letter was returned to Delta as undeliverable, with the carrier stating, "no such person ever at this address." [Filing No. 1 at 27.] A month later, Delta re-sent the letter to the Ohio address, but it was also returned to Delta as undeliverable. [Filing No. 1 at 27.] Delta then sent a letter to the Ben Watkins Amazon Storefront through Amazon's messaging system. [Filing No. 1 at 27.] Delta did not receive a response. [Filing No. 1 at 27.] Delta later discovered that the Ben Watkins Amazon Storefront published a new business address in Colorado and sent another cease-and-desist letter there. [Filing No. 1 at 26-27.] This letter was also returned as undeliverable. [Filing No. 1 at 26.]

4

Unable to reach Mr. Watkins, Delta subpoenaed Amazon for information related to the Ben Watkins Amazon Storefront. [Filing No. 1 at 28.] Amazon disclosed that the Ben Watkins Amazon Storefront is maintained in the name of Mr. Watkins and that he uses a contact address in South Carolina. [Filing No. 1 at 28.] Amazon also disclosed the email address that Mr. Watkins uses to maintain his Amazon account. [Filing No. 1 at 28.] After receiving this information, Delta sent a letter to Mr. Watkins at the South Carolina address and sent a digital copy of the letter via email to the email address Amazon disclosed. [Filing No. 1 at 28.] Delta did not receive a response from either communication. [Filing No. 1 at 28.]

Delta later discovered that the Ben Watkins Amazon Storefront again changed its contact address that was displayed to customers. [Filing No. 1 at 29.] Delta sent a letter to the updated address, but it was again returned as undeliverable. [Filing No. 1 at 30.]

On February 1, 2023, Delta filed its Complaint, in which it sets forth claim for: (1) trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a)(1)(A); (2) unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); (3) common law trademark infringement and unfair competition; and (4) deception under Indiana Code § 35-43-5-3[2], actionable under the Indiana Crime Victim's Relief Act, Indiana Code § 35-24-3-1. [Filing No. 1 at 38-45.] It requests that the Court enter judgment in its favor and enter a permanent injunction. [Filing No. 1 at 46-

---

[2] Although Delta's fourth cause of action in its Complaint is deception under Indiana Code § 35-43-5-3, Delta's Brief in Support of Motion for Default Judgment Against Defendant Ben Watkins refers to the fourth claim as conversion under Indiana Code § 35-43-4-3. [Filing No. 24 at 2-3.] "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Because deception—not conversion—was alleged in the Complaint, Delta's argument regarding conversion is waived. The Court therefore does not consider conversion in this Order.

5

47; *see also* Filing No. 23; Filing No. 24.] Delta also seeks damages, "enhanced damages," and attorneys' fees under 15 U.S.C. § 1117(a) for its Lanham Act claims.[3] [Filing No. 1 at 38-47.]

### III.
### DISCUSSION

**A. Personal Jurisdiction**

Before addressing whether the factual allegations, taken as true by virtue of default, establish liability, the Court addresses its personal jurisdiction over Mr. Watkins.

In its Complaint and Motion for Default Judgment, Delta argues that the Court has personal jurisdiction over Mr. Watkins because he expressly aimed his tortious activity toward Indiana and purposefully availed himself of the privilege of doing business in Indiana through regular sales of infringing products bearing Delta Trademarks to Indiana residents. [Filing No. 24 at 7.] But neither the Complaint nor the Motion for Default Judgment identifies any specific Indiana sales. [Filing No. 1; Filing No. 24.] So, on November 1, 2023, the Court ordered Delta to supplement its argument regarding personal jurisdiction over Mr. Watkins with evidence that established the necessary minimum contacts with Indiana that would allow the Court to exercise personal

---

[3] While Delta requests "enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a)" in its Complaint, [Filing No. 1 at 38-47], Delta does not request such relief on default judgment, [Filing No. 23 at 1; Filing No. 23-4; Filing No. 24 at 1; Filing No. 24 at 14-18 (only requesting relief for actual damages in the form of Mr. Watkins' gross sales of infringing products)]. The Court does not address relief that was not sought on default judgment. *GS Holistic, LLC*, 2023 WL 8238953, at *5 n.6 (the court did not analyze damages that the plaintiff sought in its complaint but did not mention in its motion for default judgment); *see also Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) ("[I]t is not this court's responsibility to research and construct the parties' arguments.") (cleaned up); *see also Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

jurisdiction. [Filing No. 27.] On November 15, 2023, Delta submitted evidence demonstrating hundreds of specific sales of infringing products in Indiana.[4] [Filing No. 28.]

"If jurisdiction is exercised on the basis of a federal statute that does not authorize service of process, the law requires a federal district court to determine if a court of the state in which it sits would have personal jurisdiction." *Annie Oakley Enters. v. Sunset Tan Corp. & Consulting, LLC*, 703 F. Supp. 2d 881, 886 (N.D. Ind. 2010) (citing *United States v. Martinez De Ortiz*, 910 F.2d 376, 381 (7th Cir. 1990)). The Lanham Act "does not have a special federal rule for personal jurisdiction," so the Court looks to the law of Indiana. *Id.* at 620. Indiana law permits the exercise of jurisdiction to the full extent permitted by the Fourteenth Amendment's Due Process Clause. Indiana Trial Rule 4.4(A) (Indiana's long-arm statute); *LinkAmerica Corp. v. Albert*, 857 N.E.2d 961, 966-67 (Ind. 2006).

---

[4] Before explaining its evidence and how it establishes that this Court has personal jurisdiction over Mr. Watkins, Delta explained, with some apparent annoyance, that it "did not previously submit evidence of specific sales into Indiana because, generally speaking under prevailing law, its allegations regarding personal jurisdiction should be accepted by the Court as true following [Mr. Watkins'] default." [Filing No. 28 at 2 (citing *VLM Food Trading Int'l*, 811 F.3d at 255 ("[U]pon default, the well-pleaded allegations of a complaint relating to liability are taken as true.")).] It also argues that the "Seventh Circuit has also held that a district court has no affirmative duty to 'inquire into the factual bases for jurisdiction or service prior to entering a default [judgment,]'" citing *e360 Insight*, 500 F.3d at 598. [Filing No. 28 at 2.] The Court is confounded by this response. Although the "well-pleaded allegations of a complaint relating to *liability* are taken as true," this does not mean that the well-pleaded allegations relating to *personal jurisdiction* must be taken as true. Personal jurisdiction is a threshold matter, and federal courts "have an obligation to make sure that [they] have jurisdiction to decide [a] claim." *Collins v. Yellen*, 594 U.S. ---, 141 S. Ct. 1761, 1779 (2021); *see also Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 95 (2017) (the Court "must have . . . power over the parties before it (personal jurisdiction) before it can resolve a case."). While there may not be an affirmative duty to inquire into the factual bases for jurisdiction prior to entering default judgment, the Court's obligation to ensure it has jurisdiction still stands. This Court is not in the habit of assuming that it has personal jurisdiction over defendants nor is it in the habit of entering a default judgment that is void. *See e360 Insight*, 500 F.3d at 598 ("Default judgments rendered without personal jurisdiction are void."); *see also Swaim*, 73 F.3d at 716 (instructing that a default judgment will be set aside "as a *per se* abuse of discretion if the district court that entered the judgment lacked jurisdiction.").

Courts across the Seventh Circuit have repeatedly held that the Due Process Clause allows the exercise of jurisdiction over an out-of-state defendant who sells allegedly infringing products to forum residents through a website or online storefront. *See NBA Props. v. HANWJH*, 46 F.4th 614, 617-18, 624 (7th Cir. 2022) (finding jurisdiction over out-of-state defendant for single sale through its Amazon storefront to plaintiff's investigator in the forum state), *cert denied* 142 S. Ct. 577 (2023); *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 389-402 (7th Cir. 2020) (finding personal jurisdiction where the defendant sold products through website to residents of the forum state); *Illinois v. Hemi Group LLC*, 622 F.3d 754, 757-58 (7th Cir. 2010) (finding jurisdiction over out-of-state defendant who offered and completed product sales to Illinois residents through website); *Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 906 (N.D. Ill. 2015) (finding jurisdiction over out-of-state defendant who offered products to Illinois residents through online marketplace storefront); *Delta Faucet Co. v. Iakovlev*, 2022 WL 900159, at *1 (S.D. Ind. Mar. 28, 2022) (finding jurisdiction over out-of-state defendant who sold to Indiana residents through online marketplace storefront); *Ultra Athlete LLC v. Araujo*, 2019 WL 1003337, at *2-3 (S.D. Ind. Mar. 1, 2019) (finding jurisdiction over out of-state defendants who sold to Indiana residents through online marketplace storefront).

As noted, Delta has produced significant evidence that Mr. Watkins has sold products that bear Delta Trademarks to Indiana residents through the Ben Watkins Amazon Storefront. [Filing No. 28-2 at 2-75.] Thus, the Court finds that exercising jurisdiction over Mr. Watkins comports with due process.

### B. Liability

The Court now turns to the issue of liability, which is separate and apart from whether Delta is entitled to certain relief, such as a permanent injunction.

1. *Trademark Infringement and Unfair Competition Under the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a), and Common Law Trademark Infringement and Unfair Competition*

The Court analyzes Delta's Lanham Act claims for both trademark infringement and unfair competition together with its claim of common law trademark infringement and unfair competition because the claims are analyzed under the same standard. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001) (noting that, under the Lanham Act, the elements for trademark infringement are the same as unfair competition); *Fortres Grand Corp. v. Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 & n.4 (7th Cir. 2014) ("[A]ll relevant authority we have found analyzes Indiana unfair competition claims based on trademarks the same as Lanham Act trademark claims, so we analyze all the claims together.") (emphasis omitted); *Dwyer Instruments, Inc. v. Sensocon, Inc.*, 873 F. Supp. 2d 1015, 1040 (N.D. Ind. 2012) ("The analysis under the Lanham Act for unfair competition also applies to claims for unfair competition under Indiana common law."); *Vision Ctr. Nw., Inc. v. Vision Value, LLC*, 673 F. Supp. 2d 679, 683 (N.D. Ind. 2009) (noting the same with common law trademark infringement).

To succeed on these claims, Delta must establish that "it owns a valid, protectable trademark and that there is a likelihood of confusion caused by the alleged infringer's use of the disputed mark." *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 844 (7th Cir. 2023); *Fortres Grand Corp.*, 763 F.3d at 700; *Dwyer Instrs., Inc.*, 873 F. Supp. 2d at 1040; *Vision Ctr. Nw., Inc.*, 673 F. Supp. 2d at 683. "The ultimate question underlying trademark infringement is whether consumers are likely to be confused about the *origin* of products or services based on the promotion of those products or services using a particular mark." *Grubhub Inc.*, 80 F.4th at 844 (emphasis in original). In order to determine whether a likelihood of confusion exists, courts "consider seven factors, none of which is dispositive: (1) similarity of the marks in appearance and

suggestion; (2) similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be exercised by consumers; (5) the strength of the senior user's mark; (6) existence of actual confusion; and (7) the intent of the defendant to 'palm off' its product as that of another." *Grubhub Inc.*, 80 F.4th at 847.

Delta has established Mr. Watkins' liability through the allegations of its Complaint. First, Delta owns valid and protectable trademarks. [Filing No. 1 at 5.] *See* 15 U.S.C. § 1115(a) (registration is prima facie evidence of validity). Second, Delta's Complaint demonstrates a likelihood of confusion under the seven factors.[5] Mr. Watkins' goods used Delta Trademarks. [Filing No. 1 at 26.] The area and manner of concurrent use of the Delta Trademarks is the same— individuals shopping online for Delta products. Delta Trademarks are valuable and have

---

[5] Delta does not apply the seven-factor likelihood-of-confusion test in its brief. [Filing No. 24.] Instead, it argues that there is a likelihood of confusion under the material-differences rule. [Filing No. 24 at 8-9.] This argument is misplaced. The material-differences rule applies in "gray goods" cases, which involve "trademarked goods manufactured abroad under a valid license but brought into this country in derogation of arrangements lawfully made by the trademark holder to ensure territorial exclusivity." *Societe Des Produits Nestle, S.A. v. Casa Helvetica, Inc.*, 982 F.2d 633, 635 (1st Cir. 1992); *see* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 29:46 (5th ed. Dec. 2023 update) (explaining that the material-differences rule applies in "gray goods" cases). Yet there are no allegations here showing that Mr. Watkins sold gray goods as opposed to counterfeit goods. Delta cites cases, including *Societe Des Produits Nestle, S.A.*, to support its argument that the material-differences rule can be applied outside of "gray goods" cases. [Filing No. 24 at 9.] However, *Societe Des Produits Nestle, S.A.* was a "gray goods" case, and therefore does not stand for the proposition that Delta asserts. *Societe Des Produits Nestle, S.A.*, 982 F.2d 633. Additionally, *El Greco Leather Prods. Co., Inc. v. Shoe World, Inc.*, 806 F.2d 392 (2d Cir. 1986), is arguably a "gray goods" case because the items at issue were manufactured under a valid license and then sold elsewhere, and *Otter Prods., LLC v. Triplenet Pricing Inc.*, 572 F. Supp. 3d 1066 (D. Colo. 2021), discusses the "material difference exception" to the first sale doctrine, which is a defense used by a party alleged to have committed trademark infringement. The Court is not convinced that the material-differences rule applies outside of "gray goods" cases or is the correct approach to analyze whether there is a likelihood of confusion when the first sale doctrine has not been raised as a defense. Therefore, the Court applies the standard seven-factor likelihood of confusion test. In any event, the outcome would be the same under the material-differences rule since Mr. Watkins' goods do not qualify for the Delta Limited Warranty and are not subject to Delta's quality controls. [Filing No. 1 at 25; Filing No. 1 at 31-35.]

considerable strength. [Filing No. 1 at 5.] Actual confusion exists because customers who purchase products from the Ben Watkins Amazon Storefront believe that they are purchasing genuine Delta products that come with the Delta Limited Warranty when, in fact, they are not. [Filing No. 1 at 34.] And Mr. Watkins' fictitious addresses on the Ben Watkins Amazon Storefront and his failure to respond to this action create an inference that he intended to pass his goods off as Delta's. [Filing No. 1 at 26-30.] Taken together, these factors establish that there is a likelihood of confusion caused by Mr. Watkins' use of Delta Trademarks. Thus, Delta has established Mr. Watkins' liability for trademark infringement and unfair competition under both the Lanham Act and under Indiana common law.

Delta's Motion for Default Judgment is **GRANTED** as to its claims for trademark infringement and unfair competition under the Lanham Act and under Indiana common law (Counts I-III).

2. *Deception Under Indiana Code § 35-43-5-3*

Delta does not move for or address its claim for deception under Indiana Code § 35-43-5-3 in its Brief in Support of Motion for Default Judgment Against Defendant Ben Watkins. [Filing No. 24.] This omission results in waiver. *See Draper*, 664 F.3d at 1114 ("[I]t is not this court's responsibility to research and construct the parties' arguments.") (cleaned up); *see also Schaefer, LLC*, 839 F.3d at 607 ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."). Accordingly, Delta has not established Mr. Watkins' liability for deception under Indiana law.

Delta's Motion for Default Judgment is **DENIED** as to its deception claim, and that claim is **DISMISSED** for failure to state a claim (Count IV).[6]

### C. Requested Relief

Having found that Delta has established that Mr. Watkins is liable for trademark infringement and unfair competition, the Court now considers whether Delta has demonstrated entitlement to the relief that it seeks.

"Once the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004). "'Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Id.* (quoting *Credit Lyonnais Securities (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)); *see also e360 Insight*, 500 F.3d at 604 ("[A]lthough a default judgment establishes liability, it does not answer whether any particular remedy is appropriate."). Delta requests a permanent injunction and damages in the form of Mr. Watkins' gross sales of infringing products. [Filing No. 23; Filing No. 24.] The Court addresses each in turn.

#### 1. Permanent Injunction

To obtain a permanent injunction, Delta must show:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy

---

[6] Instead of arguing its allegations support its claim for deception, Delta argues its allegations support a claim for conversion under a different statute, Indiana Code § 35-43-4-3. [Filing No. 24 at 2-3.] But because "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings," Fed. R. Civ. P. 54(c), the Court does not consider Delta's unpled claim for conversion in this Order.

12

in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*e360 Insight,* 500 F.3d at 604 (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "[I]t is not uncommon for courts to issue injunctions as part of default judgments." *Virgin Records Am., Inc. v. Johnson*, 441 F. Supp. 2d 963, 965 (N.D. Ind. 2006) (citing *Johnson v. Kakvand*, 192 F.3d 656 (7th Cir. 1999)). Fed. R. Civ. P. 65(d) requires that an order granting an injunction must include the reasons why it issued, state the specific terms, and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."

### a. Irreparable Harm

"Irreparable harm is generally presumed in cases of trademark infringement . . . ." *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000) (citing *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992) and *American Dairy Queen Corp. v. New Line Prod., Inc.*, 35 F. Supp. 2d 727, 729 (D. Minn. 1998)); *see also Kraft Foods Grp. Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 741 (7th Cir. 2013) ("[I]rreparable harm is especially likely in a trademark case because of the difficulty of quantifying the likely effect [of consumer confusion] on a brand."). Moreover, "[t]he Seventh Circuit has 'clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy.'" *American Taxi Dispatch, Inc. v. American Metro Taxi & Limo, Co.*, 582 F. Supp. 2d 999, 1005 (N.D. Ill. 2008) (quoting *Re/Max North Cent., Inc. v. Cook*, 272 F.3d 242, 432 (7th Cir. 2001)). And "the inability of the victim to control the nature and quality of the defendant's goods" in a trademark infringement case has been held to be the "most corrosive and irreparable harm." *Processed Plastic Co. v. Warner Commc'ns, Inc.*, 674 F.2d 852, 858 (7th Cir. 1982) (quotations and citation omitted).

Delta has proven, by virtue of default, that its goodwill has been damaged through Mr. Watkins' sales of infringing products. [Filing No. 1 at 11-16; Filing No. 1 at 25-26; Filing No. 1 at 31-34.] Delta has also proven that Mr. Watkins is not an Authorized Seller of Delta products, and therefore, Delta is unable to control the nature and quality of Mr. Watkins' sales of products bearing Delta Trademarks. Thus, the Court finds that Delta has shown irreparable harm in connection with Mr. Watkins' actions.

### b. Inadequate Remedy at Law

As discussed above, the Seventh Circuit has held "that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy," *Re/Max North Cent., Inc.*, 272 F.3d at 432, and has recognized that there is a "difficulty of quantifying the likely effect [of consumer confusion] on a brand," *Kraft Foods Grp. Brands LLC*, 735 F.3d at 741. Further, without a permanent injunction, Delta would be forced to repeatedly file suit any time Mr. Watkins, who has shown a complete disregard for his legal obligations and the jurisdiction of this Court, infringes on Delta's trademark rights in the future. *See MetroPCS v. Devor*, 215 F. Supp. 3d 626, 639-40 (N.D. Ill. 2016) (finding that no adequate remedy at law other than a permanent injunction exists because the defendant will likely continue its infringing conduct). Because of the difficulty of quantifying concrete harm in trademark cases, the likelihood that Mr. Watkins' infringing conduct will continue, and the harm to Delta's goodwill by Mr. Watkins' infringing conduct, the Court finds that Delta has shown that it does not have an adequate remedy at law.

### c. Balance of Hardships

Following the law is not a hardship. *MetroPCS*, 215 F. Supp. 3d at 640 (noting that an injunction requiring compliance with the law posed no burden on a defendant). Here, any hardship

imposed on Mr. Watkins stems from following the law, which is greatly outweighed by the hardships that Delta faces, including damage to its goodwill. The Court finds that the harm that Delta faces absent an injunction outweighs any harm that Mr. Watkins might face if an injunction issues.

    d. Public Interest

The Seventh Circuit has found that the public interest is served by an injunction enjoining the use of infringing trademarks because "enforcement of the trademark laws prevents consumer confusion." *Eli Lilly & Co.*, 233 F.3d at 469 (citing *Abbott Lab'ys*, 971 F.2d at 19; *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 n.8 (7th Cir. 1988)); *see also* The *American Automobile Association, Inc. v. Waller*, 2017 WL 6387315, at *6 (S.D. Ind. 2017) (finding issuing permanent injunction was in the public interest because it would "protect[ ] [the public] from being misled into believing that [defendant's] business has been given a stamp of approval from the Plaintiff"). Delta has shown that there is a likelihood of confusion from Mr. Watkins' sale of products bearing Delta Trademarks, and the Court finds that the public interest is served by an injunction to prevent such confusion.

In sum, the Court finds that Delta has shown that it will suffer irreparable injury in the absence of an injunction, that it does not have an adequate remedy at law, that the balance of hardships weighs in favor of issuing an injunction, and that issuing an injunction would serve the public interest. Accordingly, the court **GRANTS IN PART** Delta's Motion for Default Judgment, [Filing No. 23], to the extent it finds that Delta is entitled to a permanent injunction as follows:

Mr. Watkins, any aliases connected with that name, any aliases operating the Amazon Storefront with a Merchant ID number of A2VUGI7D639PP3, the Amazon Storefront with a Merchant ID number of A2VUGI7D639PP3, their employees, agents, servants, officers,

representatives, directors, attorneys, and all others in active concert or participation with any of them (the "Enjoined Parties") are permanently enjoined from:

- advertising or selling all Delta products or any products bearing the Delta Trademarks through any storefront on Amazon, including, but not limited to, the Amazon Storefront known as the Ben Watkins Amazon Storefront (with Merchant ID number A2VUGI7D639PP3);

- advertising or selling, through any medium (including all Internet and non-Internet channels), all Delta products or any products bearing the Delta Trademarks; and

- importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any Delta products or products bearing any of the Delta Trademarks.

Further, the Enjoined Parties shall destroy or return to Delta all Delta products or products bearing Delta Trademarks in the Enjoined Parties' possession, custody, or control, including but not limited to those housed in Amazon's warehouses by February 7, 2024.

Consistent with Seventh Circuit's holding in *MillerCoors LLC v. Anheuser-Busch Companies, LLC*, 940 F.3d 922, 922-923 (7th Cir. 2019), this injunction shall be set forth in a separate Order without reference to any other document. *Id.* (explaining that Fed. R. Civ. P. 65(d)(1)(C) "requires a separate document setting forth the terms of such an injunction" and the injunction "to be set forth without referring to any other document") (citations and quotations omitted); *id.* at 924-30 (Hamilton, J., dissenting) (describing the Court's holding as a "separate-document requirement").

*2. Damages*

Delta also seeks damages in the form of Mr. Watkins' gross sales of infringing products. [Filing No. 1; Filing No. 24.] In connection with a Lanham Act default judgment, the plaintiff is entitled to the infringer's gross sales. *WMS Gaming Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 609 (7th Cir. 2008) (citations omitted). If the amount is capable of ascertainment through definite figures contained in the documentary evidence or in detailed affidavits, a hearing on damages is not necessary. *e360 Insight*, 500 F.3d at 602 (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

Here, the amount of Mr. Watkins' gross sales of infringing products is capable of ascertainment through definite figures in documentary evidence. Delta's filings carefully explain how Delta calculated Mr. Watkins' gross sales. [Filing No. 23-1 at 1-5; Filing No. 23-2; Filing No. 24 at 16-18.] Using sales data subpoenaed from Amazon, Delta identified (1) each infringing item sold between February 1, 2021, and July 20, 2023; and (2) each infringing product's "item_price," which represents the gross revenue Mr. Watkins received for selling one unit of that item. [Filing No. 23-1 at 1-3; Filing No. 24 at 16.] Delta then multiplied the number of units sold for each infringing item in a given sale by the item's "item_price." [Filing No. 23-1 at 3-4; Filing No. 24 at 16.] Delta added each of these totals together, and the total sum of the 20,164 infringing products that Mr. Watkins sold was $5,402,245.73. [Filing No. 23-1 at 4; Filing No. 24 at 17.] This methodology shows that damages are capable of ascertainment from documentary evidence and, thus, no hearing is required. Since $5,402,245.73 represents Mr. Watkins' gross revenue from the sale of infringing products, and since Mr. Watkins has not rebutted that amount, Delta is entitled to that sum. *WMS Gaming Inc.*, 542 F.3d at 609.

The Court **GRANTS IN PART** Delta's Motion for Default Judgment to the extent it finds that Delta is entitled to damages against Mr. Watkins in the amount of $5,402,245.73.

### D. John Doe Defendants

Lastly, the Court **DISMISSES** the John Doe Defendants with prejudice for failure to state a claim. See *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir. 1997) (noting that stating claims against anonymous defendants is pointless). Since no outstanding defendants or claims remain, final judgment shall enter.

## IV.
## CONCLUSION

The Court, having considered the above action, makes the following rulings:

- The Court **GRANTS IN PART** Delta's Motion for Default Judgment, [23], to the extent that Delta has established that Mr. Watkins has violated the Lanham Act, 15 U.S.C. §§ 1114 and 1125 by engaging in trademark infringement and unfair competition, and has violated the common law by engaging in trademark infringement and unfair competition.

- The Court **DENIES IN PART** Delta's Motion for Default Judgment, [23], to the extent that Delta failed to establish that Mr. Watkins has violated Indiana Code § 35-43-5-3 and **DISMISSES** that claim **WITH PREJUDICE**.

- The Court **GRANTS IN PART** Delta's Motion for Default Judgment, [23], to the extent it finds that Delta is entitled to a permanent injunction as set forth in the separate Permanent Injunction issued this date.

- The Court **GRANTS IN PART** Delta's Motion for Default Judgment, [23], to the extent it finds that Delta is entitled to a damages award of **$5,402,245.73** against Mr. Watkins.

- The John Doe Defendants are **DISMISSED WITH PREJUDICE**.

Final judgment and a permanent injunction shall enter by separate orders.

Date: 12/8/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF to all counsel of record**

**Distribution via U.S. Mail to:**

Ben Watkins
1459 Belle Meade Dr.
Akron, OH 44321

Ben Watkins
17 Heritage Oak Way
Simpsonville, SC 29681